Michael Barbee, Pro Hac Vice
Texas Bar No. 24082656
Ashley Menage, Pro Hac Vice
Texas Bar No. 24089359
**GRIFFITH BARBEE PLLC**
1722 Routh Street, #910
Dallas, TX 75201
Tel: (214) 446-6020
E-mail: *Michael.Barbee@griffithbarbee.com*
E-mail: *Ashley.Menage@griffithbarbee.com*

Brian J. Foster, #012143
Ross P. Meyer, #28473
**FOSTER LAW PARTNERS**
4402 N. 36th Street, #127
Phoenix, AZ 85018
Tel: (602) 509-7345
E-mail: *brian@fosterlawpartners.com*
E-mail: *ross@meyerpllc.com*

Attorneys for Plaintiff EPA USA Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| EPA USA Incorporated,<br><br>　　　Plaintiff,<br><br>v.<br><br><br>Kamil Knap,<br><br>　　　Defendant. | No. 2:24-cv-00749-GMS<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM** |

Plaintiff EPA USA Incorporated files this Reply in support of Plaintiff's Motion for Partial Summary Judgment ("EPA's Motion") (Doc. 93).

# ARGUMENT

**1.     Knap's claim that he owns all of EPA's shares is substantiated by neither law nor fact.**

Knap's primary assertion is that he owns EPA based on the Agreement with El Palo Alto. Doc. 96 at 2:7-26; KSOF ¶ 2. But Knap's reliance on the prevention doctrine is misplaced here. And even if Knap were EPA's proper owner, there is no evidence of his share ownership.

### 1.1.     The prevention doctrine has no bearing on whether Knap was properly removed.

Knap invokes the prevention doctrine—because El Palo Alto allegedly prevented him from performing the Agreement, El Palo Alto may not complain of Knap's non-per-formance or otherwise escape liability. Doc. 96 at 3:5–25. But this argument sounds in contract remedy—and Knap has not brought a breach of contract claim here. As EPA previously asserted, neither the validity of the Agreement nor the sufficiency of the par-ties' performance is dispositive. Doc. 93 at 5:6–7. Indeed, as Knap admits, the parties "agree that the agreement . . . was never performed." Doc. 96 at 2:15–16. Knap does not challenge that he was removed according to the procedures under EPA's bylaws. Doc. 93 at 2:22–3:14.

### 1.2.     Even if Knap were EPA's owner, there is no evidence of a valid share transfer.

But even if Knap were the proper owner of EPA, he still cannot demonstrate his ownership of EPA shares. Under the internal affairs doctrine, EPA, a California corpora-tion (*see* Doc. 1 ¶ 8), is governed by California law, including EPA's share ownership, corporate governance, director removal, and corporate authority. *See Bischofberger v. D.W. Jaquays Mining & Equip. Contractors Co.*, 145 Ariz. 204, 209 (Ct. App. 1985)

(applying internal affairs doctrine). Under California law, a corporation may set its own rules for share transfers as long as they comport with the law. *See, e.g.*, Cal. Corp. Code 212(b); *see Tu-Vu Drive-In Corp. v. Ashkins*, 391 P.2d 828, 831 (1964).

Here, EPA's bylaws only recognize shareholders who are officially listed in its records as the stock owners. Doc. 93-4 at 14 § 6.2. The bylaws also require that when stocks are transferred, the transfer is recorded in EPA's books. *Id.* § 6.3. But EPA maintained no corporate formalities under Knap's management. SOF ¶¶ 38–40. Knap admitted conducting corporate business through WhatsApp messages rather than formal board meetings or via written consent. SOF ¶ 39. He maintained no board minutes or corporate records. SOF ¶¶ 38–40. The complete absence of corporate formalities demonstrates that no proper share transfer could have occurred.

Further, El Palo Alto's Director has confirmed that El Palo Alto has "never transferred its shares of EPA to anyone," and that no one "on behalf of El Palo [Alto] has ever signed a contract, including a share transfer agreement, transferring El Palo's shares of EPA to anyone including Kamil Knap." Doc. 27 (Third Decl. of N. Ponomarou) at 3:5–9. Thus, there are no records corroborating Knap's ownership claim. CSF ¶ 3; SOF ¶ 3. Absent a valid stock transfer, El Palo Alto remains EPA's sole shareholder. The undisputed fact remains: even in the light most favorable to Knap, there was never a transfer of ownership of EPA to Knap. No reasonable jury could find otherwise based on these undisputed facts and controlling law.

**2.    Knap's lack of post-termination authority to access EPA's computers remains violative of the CFAA.**

Knap relies on outdated authority to assert he had authorization to access EPA's computers after his removal. Doc. 96 at 7:15–8:11. Knap asserts unauthorized access occurs "only where initial access is not permitted." *Id.* at 7:24–26 (citing *Shamrock Foods*

1    *Co. v. Gast*, 535 F. Supp. 2d 962, 967 (D. Ariz. 2008)). But subsequent Ninth Circuit

2    caselaw clarifies that disobeying limitations "contained in contracts or policies" consti-

3    tute unauthorized access, especially where initial authorization "has been revoked." *See*

4    *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198–99 (9th Cir. 2022); *United States v.*

5    *Sullivan*, 131 F.4th 776, 785 (9th Cir. 2025) (citing *LVRC Holdings LLC v. Brekka*, 581

6    F.3d 1127, 1135 (9th Cir. 2009)).

7    **2.1.    EPA removed Knap's authority to access EPA's systems.**

8        Here, EPA terminated Knap's authorization on February 14, 2024, when it re-

9    moved him as a director. SOF ¶¶ 21–26. EPA demanded return of all corporate property

10    and access credentials by the end of the month. SOF ¶¶ 24, 25. Despite these demands,

11    Knap continued accessing EPA's systems after his removal. SOF ¶¶ 61, 62, 72, 73. He

12    admits deleting information from EPA's Google Drive after that date. CSF ¶ 72, 73. He

13    admits maintaining possession of and access to EPA's debt portfolios after his removal.

14    SOF ¶¶ 61, 70. These admitted post-removal actions—deleting or removing data, main-

15    taining portfolio access, deleting emails—exceed any claimed authorization to "protect

16    assets."

17        But even accepting that El Palo Alto requested certain actions from Knap, this

18    cannot immunize his CFAA violations. Per the Notice of Removal letter to Knap, Knap's

19    authorization to access EPA's computers was revoked when Knap was no longer a Direc-

20    tor or an Officer for the company. SOF ¶¶ 21–26. His vague references to protecting as-

21    sets and shareholder requests cannot create authorization where none existed under the

22    governing corporate documents and applicable law.

23

24

25

### 2.2.    Knap's concedes EPA's damages from his CFAA violations.

While Knap spends considerable effort arguing about authorization, he substantively ignores EPA's evidence regarding damage and loss—an element under the CFAA. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I); 18 U.S.C. § 1030(e)(11).

EPA has experienced a loss of business revenue since Knap refused to relinquish control of company assets. SOF ¶ 80–83. Some of EPA's previously collectible debt expired while Knap withheld access to the debt portfolios. SOF ¶ 83. This is evidence of EPA's damages and losses. Knap offers no contrary evidence. His failure to address the damage element in his response constitutes a concession of this essential element of EPA's CFAA claim.

## 3.    The AUTSA does not preempt EPA's claims.

The AUTSA does not preempt EPA's claims for breach of fiduciary duty, conversion and trespass to chattel, intrusion upon seclusion, prima facie tort, and constructive fraud. (Doc. 96 at 6:1–22). The AUTSA only preempts common law claims "to the extent they are based on an allegation that Defendants misappropriated trade secrets." *W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 895 (D. Ariz. 2012). To the extent the challenged claims allege acts other than trade secret misappropriation, they are not preempted. *Id.* Accordingly, claims based on independent wrongful conduct survive preemption. See *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1051 (D. Ariz. 2010) (breach of fiduciary duty claim not preempted where it involved "allegations wholly separate from the misappropriation of trade secrets").

### 3.1.    EPA's fiduciary duty claims derive from independent wrongful conduct.

EPA's breach of fiduciary duty claims are not "based on" trade secret misappropriation. They arise from Knap's violations of fundamental corporate governance duties

that exist independently of any trade secret issues. Each breach stands alone as a violation of fiduciary duty, including

> (1)    Knap's self-dealing EPA funds to purchase hockey tickets for his parents. (SOF ¶¶ 35–36),
>
> (2)    Knap's failure to maintain proper corporate recordkeeping (SOF ¶¶ 37–40),
>
> (3)    Knap's failure to timely file EPA's taxes (SOF ¶ 43), and
>
> (4)    Knap's self-dealing EPA funds to co-purchase a debt portfolio with EPA and then transferring to himself the money EPA collected using that debt portfolio (SOF ¶¶ 45–51).

These claims would exist—and EPA would be damaged—even if the debt portfolios were not trade secrets. They arise from Knap's failure to fulfill basic duties every director owes to the corporation. AUTSA does not preempt them.

### 3.2.    EPA's other common law claims are also not preempted to the extent they are not based on misappropriation.

EPA's other common law claims survive preemption because they, too, are independent of EPA's trade secret misappropriation claims. If anything, EPA's claims for conversion and trespass to chattel and intrusion upon seclusion sound in Knap's CFAA violations. The former is based on Knap's intentional misuse of "the programs and information contained on EPA's computers and the computers themselves." Doc. 1 at 16. Likewise, the latter is expressly based on Knap's intrusion upon "the computers that Knap used and continues to use without authorization." *Id.* at 17.

Similarly, EPA's claims for prima facie tort and constructive fraud are based in Knap's breach of fiduciary duties. The former is predicated on Knap's intentional injury to EPA, including the litany of breaches of his duties, wrongful access of EPA's computers, and fraudulent misrepresentations concerning EPA's ownership. *Id.* at 18. Similarly,

EPA's constructive fraud claim is based on the deceit pervading his breaches of duties to EPA. *Id.* at 20. None of the foregoing claims sound in trade secret misappropriation. The AUTSA does not preempt them.

### 3.3. Knap's conclusory assertion of his ownership of EPA's trade secrets is insufficient to create genuine dispute of material fact.

EPA established that its debt portfolios qualify as trade secrets under both federal and Arizona law. The portfolios derive independent economic value from not being generally known to competitors who could obtain value from their disclosure. SOF ¶¶ 52–56. EPA protected these portfolios through password protection and security measures. SOF ¶ 55. EPA required confidentiality agreements and non-disclosure agreements with those it granted access. SOF ¶ 56.

Knap's response does not argue why these debt portfolios fail to qualify as trade secrets under the DTSA or the AUTSA. Indeed, Knap seems to concede that the intellectual property at issue constitutes trade secrets, instead asserting that he "developed all of the intellectual property used by EPA in its operation." Doc. 96 at 5:8–9. In support, Knap relies on the Convertible Debt Agreement to allege some (but not all) of the intellectual property "are registered to . . . KAMIL KNAP." *Id.* at 5:1–2.

But Knap's Declaration is threadbare: he merely asserts, "Every part of the operational knowhow and trade secrets possessed by EPA, known as intellectual property, was created by me, and I personally owned all of it . . . . All of EPA's claims involving trade secret misconduct have no merit whatever because I owned the trade secrets, not EPA." Doc. 96-3 at 3:19–22. Self-serving declarations that state "only conclusions and not facts that would be admissible evidence" are not competent summary judgment evidence. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). And the Convertible Debt Agreement is not probative—it neither defines the intellectual property at issue nor

demonstrates Knap's ownership thereof. Summary judgment is still proper where "the evidence is merely colorable or is not significantly probative." *Pierre-Canel v. Am. Airlines*, 375 F. Supp. 3d 1044, 1053 (D. Ariz. 2019) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986)).

Thus, EPA remains entitled to summary judgment on its trade secret claims due to Knap's failure to address EPA's trade secret misappropriation claims directly.

**4.    Knap's evidentiary deficiencies cannot create genuine disputes of material fact**

Even viewing the evidence in the light most favorable to Knap, his submissions fail to create genuine factual disputes due to fundamental admissibility problems.

**4.1.    The Ponomarou transcript lacks proper authentication**

Knap relies on what purports to be a deposition transcript of Natalia Ponomarou. Doc. 96-1. The document is not authenticated. The Ninth Circuit has repeatedly held that "unauthenticated documents cannot support opposition to motion for summary judgment." *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994).

The transcript lacks any court reporter's certification attesting to its accuracy. Knap submitted no sworn testimony from anyone with personal knowledge stating the deposition is a "true and correct copy." These failures raise fundamental questions about whether the document is authentic under Rule 901. *See* Fed. R. Evid. 901.

Even if authenticated, the witness's testimony within the transcript lacks personal knowledge on key points. There, Ponomarou states "I don't know. Being a director, I believe not." Doc. 96-1 at 5:19–20. Ponomarou further testifies, "I'm not aware of any intellectual property of EPA USA." Doc. 96-1 at 6:20–21. These statements violate Federal Rule of Evidence 602's requirement that witnesses testify from personal knowledge.

A witness cannot speculate or testify to matters beyond their knowledge. Additionally, Exhibit E to Ponomarou's transcript is likewise unauthenticated and hearsay.

### 4.2. Knap's own testimony contains inadmissible hearsay and lacks personal knowledge

Knap attempts to justify the AltaOne portfolio purchase through his deposition testimony, but the testimony contains multiple layers of inadmissible hearsay. Doc. 93-2, 63:16–25. When asked about the portfolio purchase, Knap repeatedly demonstrates lack of personal knowledge. Asked about the cost, he responds, "I would not be 100 percent to the dot. Between nine—I want to say around $100,000, around $100,000." Doc. 93-2, 61:17–25. He later admits, "That is my understanding as of now, yes." Doc. 93-2, 62:17–23. These admissions of uncertainty—"I would not be 100 percent," "That is my understanding"—demonstrate Knap lacks the personal knowledge required under Rule 602. Courts cannot consider testimony based on speculation or "understanding" rather than actual knowledge.

### 4.3. Rule 36 responses fail federal requirements

Many of Knap's proposed amended Rule 36 responses violate the federal rules through evasion and contradiction. "[A]n evasive denial, one that does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981).

For example, when asked to admit he "obtained access to EPA's debt portfolios through [his] position with EPA," Knap responded, "Admitted, if what is meant is the debt portfolios of EPA's clients." Doc. 94-2 (Request No. 3). When asked about maintaining possession of the debt portfolios after removal, he objected to the request as ambiguous and provided no substantive answer. *Id.* (Request No. 7). These and his other

incomplete responses fail to "fairly respond to the substance of the matter" as Rule 36(a)(6) requires.

### 4.4.    Objections to Knap's evidence

Per Local Rule 7.2(m)(2), EPA attaches and incorporates herein by this reference its Appendix 2, EPA'S Objections to Knap's Controverting Statement of Facts, and Appendix 3, EPA's Objections to Knap's Declaration in Support of Knap's Response.

## CONCLUSION

Based on the foregoing, EPA respectfully requests that the Court grant its Motion for Partial Summary Judgment.

Dated: July 7, 2025

Respectfully submitted,

**GRIFFITH BARBEE PLLC**

*/s/ Ashley Menage*

Michael Barbee, Pro Hac Vice
Texas Bar No. 24082656

Ashley Menage, Pro Hac Vice
Texas Bar No. 24089359

1722 Routh Street, #910
Dallas, TX 75201
Tel: (214) 446-6020

*Michael.Barbee@griffithbarbee.com*
*Ashley.Menage@griffithbarbee.com*

Brian J. Foster, #012143
Ross P. Meyer, #28473

**FOSTER LAW PARTNERS**

4402 N. 36th Street, #127
Phoenix, AZ 85018
Tel: (602) 509-7345

*brian@fosterlawpartners.com*

Attorneys for Plaintiff EPA USA Inc.