**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

EPA USA Incorporated,

            Plaintiff,

v.

Kamil Knap,

            Defendant.

No. CV-24-00749-PHX-GMS

**ORDER**

Pending before the Court are Defendant's Motion to Dismiss and Motion to Amend Answer (Doc. 75), Defendant's Motion for Summary Judgment (Doc. 88), Plaintiff's Motion for Partial Summary Judgment (Doc. 93), Defendant's Motion for Rule 36(b) Relief (Doc. 94), Defendant's Cross Motion for Summary Judgment (Doc. 96), and Plaintiff's Motion to Strike Defendant's Cross Motion (Doc. 101).

Defendant's Motion to Dismiss and Motion to Amend Answer (Doc. 75) are both denied; subsequently, Defendant's Cross Motion for Summary Judgment (Doc. 96) is denied, and Plaintiff's Motion to Strike Defendant's Cross Motion (Doc. 101) is denied as moot. Defendant's Motion for Rule 36(b) Relief (Doc. 94), however, is granted. The Court will thus allow Plaintiff to file notice detailing whether it (a) wishes to proceed with its original Motion for Partial Summary Judgment (Doc. 93), with the Court considering Defendant's late responses and objections, or (b) if it wishes to submit a redrafted version of the motion to address Defendant's late responses. The Court takes the other pending motion—Defendant's Motion for Summary Judgment (Doc. 88)—under advisement.

**BACKGROUND**

This order borrows the facts as set out in the Court's previous orders in Doc. 22 and Doc. 35. This case involves a dispute between Plaintiff EPA USA Incorporated ("EPA"), a California corporation, and Defendant Kamil Knap, EPA's former Board Member and Director. (Doc. 1 at 1). EPA's principal place of business is in Arizona. (*Id.* at 2). EPA is a debt collection agency that purchases "debt portfolios" from lenders. (Doc. 13 at 6). These portfolios are typically filled with past-due debt that the original lender no longer wishes to pursue. (*Id.*). EPA purchases the portfolios at a price lower than the outstanding debt and produces a profit by successfully pursuing and collecting the past-due amounts.

Knap formed EPA in 2019, using financing provided by El Palo Alto PTE.LTD ("El Palo Alto"). (*Id.* at 7). El Palo Alto is a Singaporean company and is the original sole shareholder of EPA. (*Id.*). Knap served as EPA's original Director and Officer. (*Id.*).

On September 26, 2023, Knap entered into a written agreement with El Palo Alto and a third company, R2P Invest PTE Ltd ("R2P"). (Doc. 15-2 at 1-4). That agreement stated that Knap would transfer his 33% ownership in El Palo Alto to R2P—along with access codes, e-mails, banking information, and debt portfolios—and in return, El Palo Alto would transfer EPA to Knap in entirety. (*Id.*). While the parties dispute fault, they agree that the contract was never performed. In February 2024, El Palo Alto terminated Knap from his employment with EPA. (Doc. 13 at 8). Accordingly, the evidence presented indicates that El Palo Alto retains sole ownership of EPA.

On April 4, 2024, EPA filed its complaint against Knap, alleging that he misappropriated EPA's trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836), violated the Computer Fraud and Abuse Act (18 U.S.C. § 1030) by improperly maintaining possession of EPA's valuable debt portfolios, and breached his fiduciary duties to EPA by taking intentional action to frustrate EPA's operations, among other claims. (Doc. 1 at 9-16). In his answer, Knap admitted that this Court has subject matter jurisdiction over the controversy. (Doc. 16 at 2).

On May 1, 2024, EPA moved for a temporary restraining order ("TRO") against

Knap, asking the Court to prevent Knap from withholding, destroying, or accessing EPA's property. (Doc. 13). The Court granted the TRO. (Doc. 20; Doc. 22). The Court converted the TRO into a preliminary injunction on May 29, 2024, imposing additional requirements as well. (Doc. 35).

<strong>DISCUSSION</strong>

### I.    Defendant's Motion to Dismiss and Motion to Amend Answer (Doc. 75)

Knap moves to dismiss this action for lack of subject matter jurisdiction and, in the alternative, moves for leave to amend his answer to assert counterclaims. (Doc. 75). Both requests are denied.

#### a.    Motion to Dismiss

Knap identifies a "contract dated July 21, 2022, from which this entire dispute arises," and points to a provision in the contract that states:

> This Agreement (and any dispute, controversy, proceedings or claim of whatever nature arising out of this Agreement or its formation) shall be governed by and construed in accordance with the laws of Singapore and the parties irrevocably submit to the exclusive jurisdiction of the Courts of Singapore.

(Doc. 75 at 2; Doc. 26-2 at 14). He identifies another contract, signed "by the parties" on September 9, 2023, which states: "All of the terms of the Agreement shall be governed by the jurisdiction of Singapore." (Doc. 75 at 2; Doc. 15-2 at 4). Knap avers that since there is a "clearly stated forum selection clause, the Court has little choice but to dismiss this action for lack of jurisdiction." (Doc. 75 at 3). Knap is incorrect.

The Court has subject matter jurisdiction over this matter. "[T]he Supreme Court has held that a forum selection clause does not deprive a federal court of subject matter jurisdiction." *Kamm v. ITEX Corp.*, 568 F.3d 752, 754 (9th Cir. 2009) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). Though Knap correctly argues that "parties cannot confer on a federal court jurisdiction that has not been vested in that Court by the Constitution and Congress" (Doc. 75 at 2), that argument is ultimately irrelevant. Here, Congress conferred subject matter jurisdiction to this Court over this action via federal question jurisdiction. 28 U.S.C. § 1331. And private parties do not have the power

to divest a court of subject matter jurisdiction through contractual agreement. *Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 672-73 (9th Cir. 2025) ("Where a federal statute vests a court with the power (or duty) to act of its own accord, a private agreement cannot bind the court and the agreement is entitled to only so much consideration as provided for by Congress. Forum selection clauses neatly illustrate this rule."). The Court thus readily dismisses Knap's argument that the Court lacks jurisdiction here.

But a "court cannot ignore the forum selection clause simply because the court has subject matter jurisdiction." *Powell v. United Rentals (N. Am.), Inc.*, 2019 WL 1489149, at *5 (W.D. Wash. Apr. 3, 2019). "Instead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 60 (2013).

A defendant seeking dismissal of an action through forum non conveniens based on a forum selection clause must demonstrate, as a threshold matter, that the clause is applicable to the controversy at hand. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Only if the clause "covers the present suit" can a court next "consider whether the forum-selection clause is enforceable." *Id.* at 1086-87. The burden shifts to the plaintiff to show "why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 1087 (quoting *Atl. Marine Const. Co., Inc.*, 571 U.S. at 64). "While a court may consider factors relating to the public interest . . . , those factors will rarely defeat a transfer motion." *Id.* at 1088. "The practical result is that a forum-selection clause 'should control except in unusual cases.'" *Id.* (quoting *Atl. Marine Const. Co., Inc.*, 571 U.S. at 64).

Knap fails in his motion to establish that any forum selection clause "covers the present suit." *Sun*, 901 F.3d at 1086. Knap merely points to a provision in "a contract dated July 21, 2022, from which," he conclusorily alleges, "this entire dispute arises." (Doc. 75 at 2 (citing Doc. 26-2 (the "Convertible Debt Agreement"))). He also states that

"another document" contains a "statement that also affirms the intent of the parties as to jurisdiction in Singapore." (*Id.* at 3 (citing Doc. 15-2 (the "Ownership Transfer Agreement"))). But Knap makes no effort to tie these contracts with the present suit.

The Ninth Circuit has repeatedly held that "forum-selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of the contract itself.'" *Sun*, 901 F.3d at 1086 (citing string of cases). "By contrast, forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Id.* (citations omitted).

Here, the forum selection clause in the Convertible Debt Agreement only applies to disputes "*arising out of* this Agreement or its formation." (Doc. 26-2 at 14 (emphasis added)). And the Ownership Transfer Agreement only states that "*terms of the Agreement shall be governed by the jurisdiction of Singapore.*" (Doc. 15-2 at 4). Knap does not explain how EPA's claims in this suit—misappropriation of trade secrets, improper possession of EPA's debt portfolio, and taking intentional action to frustrate EPA's operations—involve "the interpretation and performance" of the two identified agreements. *Sun*, 901 F.3d at 1086 (citations omitted). Notably, Knap fails to identify even a single provision contained within these two agreements—other than the purportedly valid forum selection clauses themselves—that requires interpretation or performance to resolve this case. And the absence of any "relating to" language in the clauses indicates that they do *not* apply broadly to "any dispute that has some logical or causal connection to the parties' agreement[s]," like potentially this case. *See id.* This is fatal to Knap's motion to dismiss.

The motion to dismiss is denied.

### b. Motion to Amend

Alternatively, Knap moves to amend his answer to assert claims, initially brought by Knap in another action, as counterclaims here, which he styles as "compulsory." (Doc. 75 at 3). Per the Court's Case Management Order, the deadline to amend pleadings was

September 9, 2024. (Doc. 53 at 1). Knap's untimely motion was filed on April 15, 2025— more than seven months after the expiration of the deadline. (*See* Doc. 75).

Once the deadline imposed by a scheduling order has lapsed, the person seeking leave to amend must demonstrate "good cause." *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4). Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). If the party has not been diligent, "the inquiry should end." *Id.* The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007).

Knap has not demonstrated that good cause exists to permit his amendment. Knap brought a suit, individually and derivatively on behalf of EPA as a shareholder, against R2P and two individual defendants on November 17, 2023, in the Eastern District of Texas. (*Knap et al. v. R2P Invest PTE.LTD et al.*, No. 6:23-cv-00564 (E.D. Tex.), ECF No. 1) [hereinafter the "Texas Suit"]. In that suit, Knap brought claims under the Defend Trade Secrets Act and the Computer Fraud and Abuse Act. (*Id.*). During the pendency of the suit, in February 2024, Knap was terminated from his employment with EPA. (Doc. 13 at 8). This current action was brought by EPA in April 2024, and the Court granted EPA's motions for a TRO and preliminary injunction in May 2024. (Doc. 22; Doc. 35).

The district court dismissed the Texas Suit, without prejudice, on June 18, 2024, for failure to file proof of service. (Texas Suit, ECF No. 4). Knap then asked the district court, in late July and again in early August, to reinstate the case. (Texas Suit, ECF Nos. 6, 7). The district court reinstated the case on November 13, 2024. (Texas Suit, ECF No. 8). Knap then moved to stay the Texas Suit pending resolution of this current action. (Texas Suit, ECF No. 9).

Knap's account then differs from what is reflected on the Texas Suit's docket. Knap, in his motion, claims that his request for a stay was granted "and that case is now on

hiatus pending resolution here." (Doc. 75 at 3). But there is no order on the Texas Suit's docket indicating that the district court issued a stay of that action. Instead, the district court, on February 13, 2025, issued an order for Knap to show cause as to why the Texas Suit should not be dismissed or transferred for lack of proper venue, or transferred to the District of Arizona on convenience grounds. (Texas Suit, ECF No. 10). Knap did not respond to this order. "In the absence of briefing" from Knap, the district court in April 2025 "decline[d] to exercise its discretion to transfer the case to the District of Arizona." (Texas Suit, ECF No. 11 at 3).

The Court finds that Knap has not been diligent in seeking amendment. Knap was aware of the facts and theories supporting amendment since the inception of this action, given that he filed the Texas Suit before this action was initiated. Moreover, once the Texas Suit was dismissed *without* prejudice on June 18, 2024, Knap had ample time to seek leave from this Court to amend his answer. The Court issued the initial Case Management Order on July 11, 2024—sixty days before the deadline to amend pleadings had lapsed. (Doc. 53). But Knap moved instead to reinstate the Texas Suit, rather than seeking permission to file those claims here as counterclaims. And when given the opportunity to address whether the Texas Suit should be transferred to the District of Arizona, Knap declined that opportunity.

Moreover, Knap misrepresents the procedural posture of the Texas Suit. In his reply brief, dated May 5, 2025, Knap states that if he prevails in this current action, "he can activate the Texas case again to have his claims heard," noting again that "he stayed the Texas case pending the outcome here." (Doc. 80 at 2). But the district court did not stay the action—instead, it dismissed the suit and declined to transfer it to this District. (Texas Suit, ECF No. 11). This Court will not allow Knap to bring his counterclaims at this late juncture when he had ample opportunity to do so from June 18 to September 9, 2024.[1]

---

[1] Knap also states that this is a situation where a pleader need not assert a compulsory counterclaim if, "when the action was commenced, the claim was the subject of another pending action." (Doc. 75 at 3 (quoting Fed. R. Civ. P. 13(a)(2)(A)). While it is true that Knap's proposed counterclaims were pending when this current action was first commenced, that was not true from June 18 to September 9, 2024. The Texas Suit was dismissed during that period, and it was not reinstated until November 13, 2024—more

The motion to amend is denied.

## II.    Defendant's Cross Motion for Summary Judgment (Doc. 96) and Plaintiff's Motion to Strike Defendant's Cross Motion (Doc. 101)

Next, Knap, in his response to Plaintiff's Motion for Partial Summary Judgment, cross moves for summary judgment on the counterclaims that he sought leave to assert. (Doc. 96 at 8:18-9:2). EPA moves to strike this cross motion. (Doc. 101).

The Court has now denied Knap's request for leave to amend his answer (Doc. 75). Knap's proposed counterclaims are thus not live in this action, and he cannot seek summary judgment on them. *See, e.g.*, *Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*, 2015 WL 4656257, at *5 (C.D. Cal. Aug. 3, 2015) ("[D]efendants cite no authority for the proposition that they may seek summary judgment on a claim that has not been pleaded, after being denied leave to add that claim in a pretrial motion."). The Court therefore denies Knap's Cross Motion for Summary Judgment (Doc. 96). EPA's Motion to Strike Knap's Cross Motion (Doc. 101) is denied as moot.

## III.    Defendant's Motion for Rule 36(b) Relief (Doc. 94)

Finally, Knap moves for relief from his untimely responses to EPA's Requests for Admission under Rule 36(b). (Doc. 94 at 1). The Court will grant the relief sought.

Under Rule 36(a), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Failure to respond to a request for admission within 30 days of service "results in automatic admission of the matters requested." *Fed. Trade Comm'n v. Medicor, LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) (citation omitted). Furthermore, "[n]o motion to establish the admissions is needed because [Rule] 36(a) is self executing." *Id.* (citation omitted). However, under both the Court's Case Management Order and Rule 36, the

---

than two months *after* the deadline to amend pleadings in this case had lapsed. A claim cannot be "subject of another pending action," Fed. R. Civ. P. 13(a)(2)(A), if that action has been dismissed, even without prejudice. *See Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir. 1959) (noting that, in the context of voluntary dismissal, a "suit dismissed without prejudice . . . leaves the situation the same as if the suit had never been brought in the first place").

parties may stipulate to extensions without the Court's leave.  (Doc. 53 at 2 ("[T]he parties may mutually agree, without Court approval, to extend the time provided for discovery responses in Rules 33, 34, and 36 of the Federal Rules of Civil Procedure.")); Fed. R. Civ. P. 36(a)(3) ("A shorter or longer time for responding may be stipulated to . . . .").

A court may permit an admission to be withdrawn if (1) "it would promote the presentation of the merits of the action" and (2) "the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b).  The Ninth Circuit has long recognized the authority of district courts to permit late responses to requests for admission.  *See French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1968).  While a party need not show good cause for Rule 36(b) relief, *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016), district courts "have been advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission."  *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citation modified).

EPA—as "[t]he party relying on the deemed admission"—"has the burden of proving prejudice."  *Id.* at 622.  Prejudice is demonstrated by "the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted."  *Id.* (citations and internal quotation marks omitted).  District courts must "focus on the prejudice that the nonmoving party would suffer *at trial*."  *Id.* at 623 (emphasis added).  The Ninth Circuit has made clear that "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice."  *Id.* at 624.

EPA does not contest that withdrawal of Knap's admissions would promote the presentation of the merits of this action.  (Doc. 94 at 3).  The first Rule 36(b) factor favors withdrawal.  Additionally, the Court is not persuaded that withdrawal would prejudice EPA in maintaining or defending this action on the merits.  The second Rule 36(b) factor also favors withdrawal.  The Court will thus permit Knap to withdraw his previous admissions.

EPA served the pertinent Requests for Admission ("RFAs") on December 17, 2024.

(Doc. 95 at 2). Knap's responses were due January 16, 2025. *See* Fed. R. Civ. P. 36(a)(3). Knap did not timely respond to the RFAs—thus deeming them admitted. On February 5, 2025, counsel for EPA sent an email to Knap's counsel "requesting the overdue responses to the RFAs." (Doc. 93-1 at 40). Five days later, on February 10, 2025, EPA's counsel received Knap's objections and responses to the RFAs. (*Id.*). Knap's late responses are set forth at Doc. 93-1, pp. 43-50.

At Knap's first deposition, conducted on April 28, 2025, counsel for EPA presented Knap with his objections and responses to the RFAs and asked him whether his responses were accurate. (Doc. 99 at 2). EPA also asked Knap about topics in the RFAs during both of his depositions.[2] (*Id.*). EPA then timely filed its Motion for Partial Summary Judgment on May 23, 2025, relying on Knap's deemed admissions throughout, rather than his untimely responses. (Doc. 91; Doc. 93). Knap filed this motion for Rule 36(b) relief on June 3, 2025, several days after the close of fact discovery—May 2, 2025 (Doc. 70 at 1)—and the deadline for dispositive motions—May 23, 2025 (Doc. 86).

EPA alleges that granting withdrawal would prejudice its "ability to conduct further discovery or otherwise challenge the admissions Knap seeks to amend," citing the close of the discovery period. (Doc. 95 at 5). The Court is unconvinced that this reason demonstrates any "difficulty [EPA] may face in proving its case at trial." *Conlon*, 474 F.3d at 624.

First, contrary to EPA's assertion otherwise, EPA *did* have the ability to conduct discovery or otherwise challenge Knap's late responses. EPA received Knap's late responses on February 10, 2025—more than 2.5 months *before* the date of Knap's first deposition, April 28, 2025. EPA even presented Knap with his late responses at his first deposition. The Court thus finds that EPA had ample opportunity to "depose Knap about his contradictory positions" in his late responses and "seek additional documents to rebut his belated denials." (*Contra* Doc. 95 at 5).

Second, EPA's counsel's follow-up email to Knap's counsel requesting the overdue

---

[2] The Court permitted EPA to continue the deposition of Knap after the close of fact discovery, as long as the deposition was completed by May 15, 2025. (Doc. 82).

responses to the RFAs (Doc. 93-1 at 40) could reasonably be construed as EPA's acquiescence to an extension for Knap's late responses. As noted in the Case Management Order, the parties can agree to extend the time provided for discovery responses in Rule 36 "*without* the Court's leave." (Doc. 53 at 2); *see also* Fed. R. Civ. P. 36(a)(3). And EPA does not aver that it gave any indication to Knap, or his counsel, that it intended to rely on Knap's deemed admissions in its summary judgment motion. *Cf. Conlon*, 474 F.3d at 620 (affirming the district court's denial of Rule 36(b) relief where the requesting party there "twice advised" the moving party "that the admissions were deemed admitted" before filing any motion for summary judgment). Granting withdrawal here prevents the incentive for gamesmanship where a party asks for and utilizes late responses during the discovery period, yet still later reaps the benefits of deemed admissions at summary judgment. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (citation omitted)).

Third, EPA does not seriously contend that allowing withdrawal here would impair its ability to present its claims at trial. To the contrary, EPA avers that it has provided "*sufficient additional evidence*" in its Motion for Partial Summary Judgment (Doc. 93) "to conclusively establish its requested declaratory relief and Knap's liability for breaches of fiduciary duties, trade secret misappropriation, and [Computer Fraud and Abuse Act] violations." (Doc. 95 at 6 (emphasis added)). EPA further notes that "Knap admits the matters in some of the at-issue requests in his proposed amendments," and that "some of his amended denials in effect constitute admissions." (*Id.*). Thus, EPA has not demonstrated any "difficulty [it] may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Conlon*, 474 F.3d at 622 (citation modified).

And fourth, while the Court is sympathetic to EPA's concern that Knap filed this motion for relief only after the deadlines for fact discovery and dispositive motions had

passed (Doc. 95 at 5), that alone is insufficient to show prejudice—especially given that EPA had the late responses for much of the discovery period. *See Conlon*, 474 F.3d at 624 ("[W]e are reluctant to conclude that a lack of discovery, without more, constitutes prejudice."). EPA's cases cited in reliance of its assertion that "prejudice may still be found where the discovery and dispositive motion deadlines have long since passed" (*id.* (citation modified)) are inapposite here.

In *Lee v. Caesars Entertainment Corporation*, the district court denied Rule 36(b) relief where the moving party "waited nearly ten months to attempt to amend his deemed admission." 2018 WL 6591798, at *4 (D. Nev. Dec. 14, 2018). However, there, the moving party only served its late responses on the requesting party *after* the requesting party filed its summary judgment motion. *Id.* at *2. And in *Saroyan Lumber Company, Inc. v. El & El Wood Products Corporation*, the Ninth Circuit, in an unpublished decision, found that the district court did not abuse its discretion in denying withdrawal where the party moved for relief only after the requesting party filed its summary judgment motion. 126 F. App'x 371, 372 (9th Cir. 2005). However, in that case, like in *Lee*, the moving party also did not submit any late responses to the requesting party before the requesting party filed its summary judgment motion. (*Saroyan Lumber Co. v. El & El Wood Products Corp.*, No. 2:01-cv-07748 (C.D. Cal.), ECF No. 102 at 2). In contrast, here, Knap served his late responses on EPA more than three months *before* EPA filed its motion for partial summary judgment.

The motion for Rule 36(b) relief is granted. Within two weeks of the date of this order, EPA is directed to file notice, in four pages or less, informing the Court whether it wishes to proceed with its original Motion for Partial Summary Judgment (Doc. 93). If EPA does wish to proceed in that manner, then the Court will consider Knap's late responses (Doc. 93-1 at 43-50) when deciding EPA's partial summary judgment motion. However, because EPA agrees with Knap that "the deemed admissions alone practically eliminate the presentation of the merits of the case" (Doc. 95 at 3 (citation modified), it appears that EPA's partial summary judgment motion is heavily dependent on the entirety

of the RFAs being deemed admitted.  Thus, the Court will allow EPA, if it so chooses, to redraft and refile its partial summary judgment motion in light of Knap's late responses to the RFAs.  If EPA wishes to redraft and refile its partial summary judgment, the Court will set an appropriate deadline and dismiss EPA's original motion (Doc. 93) without prejudice.

## CONCLUSION

For the reasons stated above,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 75) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Amend Answer (Doc. 75) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment (Doc. 96) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's Cross Motion (Doc. 101) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Rule 36(b) Relief (Doc. 94) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall file notice, within two weeks from the date of this order, informing the Court as to whether it (a) wishes to proceed with its original Motion for Partial Summary Judgment (Doc. 93), with the Court considering Defendant's late responses and objections, or (b) if it wishes to submit a redrafted version of the motion to address Defendant's late responses.  Plaintiff's notice shall not exceed four (4) pages.  No response or reply shall be permitted.

Dated this 31st day of March, 2026.

_____
G. Murray Snow
Senior United States District Judge

- 13 -