Robert M. Frisbee #018779
7691 E. Via Montoya
Scottsdale, Arizona 85255
Phone:  (602) 354-3689
Fax: (602) 266-7744
Cell: (480) 600-4719
rfrisbee@fbplclaw.com
Attorneys for Defendant Knap

## IN THE UNITED STATES DISTRICT COURT

## FOR DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **EPA USA Incorporated,** | ) | No. 2:24-cv-00749-GMS |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S RESPONSE TO** |
| vs. | ) | **PLAINTIFF'S FIRST AMENDED** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| **Kamil Knap,** | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Kamil Knap hereby responds to Plaintiff's First Amended Motion For Partial Summary Judgment. Incorporated herein by reference is Defendant's pending Motion For Summary Judgment (Doc. 88; Doc. 107, p.1, ll. 27,28).

## INTRODUCTION

Because of the recent Order herein (Doc. 107) the Court's familiarity with the underlying facts is assumed. Defendant will get immediately to the point – none of Plaintiff's claims are entitled to summary judgment but instead should be dismissed. If the Court finds otherwise, then Defendant's evidence at least creates disputed issues of fact which he is entitled to heard by a jury.

## ARGUMENT[1]

**1.    Kamil Knap's Removal From EPA Was Invalid**

EPA wants a declaration from the Court that as a matter of law El Palo Alto's ouster of him from his position with EPA was entirely legitimate. Of course, if El Palo Alto didn't

_____

[1]Defendant's Argument is presented in the order of Plaintiff's presentation.

own EPA but Kamil Knap did, it couldn't have removed him. And EPA could not have brought this case. Because Mr. Knap is entitled to avail himself of the prevention doctrine, the issue of EPA's ownership should be decided in his favor. Absent that, the issue is one of fact, not one for summary judgment.

Defendant recognizes that the foregoing statement is in partial conflict with the Court's statement at p.3, ll. 2-5 of its May 28, 2024 Order (Doc. 35), that the parties "agree that the agreement [of September 26, 2023 (Doc. 15-2)] was never performed." While it is true that various parts of the agreement were not performed by either party, the Court's statement does not contemplate that R2P/El Palo Alto prevented Mr. Knap from performing his part of it.

Mr. Knap has repeatedly stated under oath that in February, 2024, he became the owner of EPA because of that agreement. (Doc. 15-1, ¶¶ 4, 12, 14; Doc. 26-3, ¶ 6; Knap Declaration of 6/18/25 [Doc. 96 ( c), ¶ 5]) The Agreement at page 3 recites paragraphs A. through J. as **AGREED.** Paragraph I. states: "**KAMIL** will transfer **EPA USA Inc.** to his name, and thus **EPA USA Inc.** will no longer [be] a subsidiary of **Company. By 16/10/2023."** Nothing in the Agreement states that Paragraphs A. through H. are conditions precedent to paragraph I.

R2P/El Palo Alto and EPA are estopped from denying the parties' intent that EPA be transferred to Mr. Knap. As expressed ina text message between Mr. Knap and Natalie Pomeranou on 12 October 2023:

> Natalie P: we have no intent in keeping EPA
> Knap: I am sad to hear that, but fully understand
> Natalie P: It was the agreement from the beginning - we stick to what was agreed

Even if one assumes that paragraphs A. through H. *are* conditions precedent, Mr. Knap has also repeatedly stated under oath that he was prevented from fulfilling them by the actions of R2P/El Palo Alto/EPA. (Doc. 15-1, ¶¶ 10, 11, 16, 17, 21; Doc. 26-3, ¶ 8; Doc. 96 ( c), ¶¶ 5, 8). That conduct evokes the prevention doctrine.

The doctrine is a common-law principle of contract law which holds that a contracting party has an implied duty not to do anything which prevents the other party from performing its obligation, i.e. a party who prevents performance of a contract may not complain of the other's nonperformance. Where a promisor hinders fulfillment of a condition to his performance, the condition may be waived or excused. *Barnhill v. Veneman,* 524 F.3rd 458 (4th Cir. 2008).

Where one contracting party takes actions that prevent the other party from being able to fulfill a condition precedent to the contract, the first party may not use its own action as a mechanism for avoiding performance of its contractual obligation. *General Datacomm Indus. v. Arcara,* 407 F.3d 616 (3rd Cir. 2005):

> One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised. 3A *Corbin on Contracts* § 767 at 540 (1961).

Similarly, Williston states: "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." 5 *Williston on Contracts* § 677 at 224. Prevention, therefore, can negate a requirement to satisfy a condition precedent. For the prevention doctrine to apply, it needs only to be shown that the party materially contributed to the non-occurrence of the condition. *Moore Bros. Co. v. Brown & Root, Inc.,* 207 F.3d 717 (4th Cir. 2000).

As said in the old but authoritative case of *Parrish v. Wightman*, 184 Va. 86, 34 S.E. 2d 229, 232 (1945):

> Where a contract is performable on the occurrence of a future event there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, *particularly where it is dependent in whole or in part on his own act;* and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. (Emphasis added.)

Subsequent to the Agreement, Mr. Knap authorized the issuance of a stock certificate showing him as the 100% of EPA. (Doc. 26-3, ¶ 12) The certificate should be honored, this entire case declared *ultra vires* and dismissed. Should the Court decline to do so, it is clear that Defendant Knap has cited disputed facts sufficient to create jury issues as to Plaintiff's prevention of performance by Mr. Knap and right to the ownership of EPA.

**2.      Plaintiff's Breach of Fiduciary Duty and Related Claims are Pre-empted**

In *W. L. Gore & Associates v. GI Dynamics, Inc.,* 872 F.Supp.2d 883 (D. Ariz. 2012) this Court interpreted the pre-emption provision of the Arizona version of the Defend Trade Secrets Act. A.R.S. § 44-407(A) displaces conflicting tort, restitutionary or other laws of Arizona providing civil remedies for misappropriation of a trade secret, except for contract remedies and claims not based on misappropriation.

There is no doubt but that EPA's are based on contract or quasi-contract principles. All are bottomed on claims related to the supposed taking of the IP used by EPA by Mr. Knap, and all seek restitutionary relief. As will be seen, that the IP is actually owned by Mr. Knap.

In rejecting an argument made by plaintiff in *Gore* that it hadn't yet been determined whether the disputed information rose to the level of trade secrets, so that pre-emption was inapplicable, this Court said: "This argument was considered and rejected in *Firetrace* [*USA LLC v. Jesclard,* 800 F. Supp.2d 1042 (D. Ariz. 2010)].   *  *  *   [T]he *Firetrace* court considered interpretations of of versions of the USTA from around the country, and concluded that "the AUTSA preempts . . . common law tort claims based on the misappropriation of information, whether or not that information meets the statutory definition of a trade secret.'"

The claims made here regarding the IP – disingenuously called "EPA's resources" -- are little different than those made in *Gore*. They are all pre-empted and should be dismissed as a matter of law rather than adjudged to be in EPA's favor.

4

**3.     Plaintiff's Claims Based On Intellectual Property Must Fail Because It Doesn't Own Any Intellectual Property.**

Trade secrets are a form of intellectual property (IP) comprising confidential information that is not generally known or readily ascertainable, derives economic value from its secrecy, and is protected by reasonable efforts to maintain its confidentiality. *Rivendell Forest Prods. V. Georgia-Pacific Corp.,* 28 F.3d 1042 (10th Cir. 1994).

These parties agreed in their CONV ERTIBLE DEBT AGREEMENT (Doc. 26-2) at p. 3 that "Business IPRs" means the "IPRs used by the Company in the operation of its business," and "IPRs" is intellectual property, including "copyright and related rights, database rights, registered designs, know-how and *confidential information"* and "all other intellectual property rights or equivalent right which currently exist or are recognized in the future. (Emphasis added.) At ¶ 12, "INTELLECTUAL PROPERTY RIGHTS 12.1 The Company *is not* the sole legal and beneficial owner and, where registration is required, the sole registered owner . . . Some IPR's are registered to NECROSOFT and KAMIL KNAP."

There is no mention in the record that there is any intellectual property required to be registered in the operation of EPA. Kamil Knap was never an employee of EPA; his employment contract was with MBA Consult Pte. Ltd., to which there is no reference regarding intellectual property. (Doc. 96 ( c) 18; SMF 4). Natalia Pomeranou testified in her deposition on 4/22/25, p. 26:20-21: *I'm not aware of any intellectual property of EPA USA.*"

Kamil Knap developed all of the intllectual property used by EPA in its operation. (Doc. 96 ( C) 18; SMF 5) Without more, his titular employer makes no difference. "The general rule is that an individual owns the [intellectual property] rights to the subject matter of which he is an inventor, even though he conceived it or reduced it to practice in the course of his employment." *Banks v. Unisys Corp.,* 228 F. 3d 1357 (Fed. Cir. 2000).

There are two exceptions to the rule: 1) where there is an express contract that the employer owns the invention, and 2) where an employee is hired to invent something or solve

5

a particular problem. EPA has neither alleged or presented evidence of an express contract or of Knap's hiring to invent something. It cannot, of course, because Mr. Knap was not EPA's employee.

Plaintiff's claim for Unfair Competition refers to "confidential information relating to EPA, allegedly wrongfully taken by Mr. Knap, "which does not rise to the level of a trade secret . . ." [2] (Doc. 1, p. 14, ll. 9-21) As quoted above, the CONVERTIBLE DEBT AGREEMENT specifies that confidential information *is* intellectual property. Mr, Knap created that information, owns it entirely, and not assigned it to EPA. As a matter of pure logic, Mr. Knap cannot misappropriate what he owns and cannot have caused damage by keeping it. Counts 2 (DTSA) and 10 (AUTSA) fail as a matter of law for the same reason.

Since Knap was not EPA's employee, and any intellectual property he developed (including any trade secrets) belongs to him, EPA's claims for trade secret misappropriation and any claim based on his access to the debt portfolios must fail.

**4. There Are No Facts Which Support EPA's CFAA Claim.**

EPA claims that Defendant Knap violated 18 U.S.C. §§ 1030(a)(5)( C), 1030 (g), and 1030 ( C)(4)(A)(i)(I). These claims are supposedly supported by EPA's self-serving statements of material fact which collectively allege unauthorized access by Mr. Knap to EPA's computers after he was terminated, all of which are entirely factually disputed (Doc. 96 ( c) 65-73)

First, Mr. Knap thought and maintains in this litigation that he owns 100% of EPA due to the Agreement and EPA's conduct. If he is correct, then he was entitled to do anything he wanted with the computers. Moreover, he needed access to the computers to comply with EPA's requests to turn over material. He denies under oath (Doc. 96 ( c) 10) that he prevented EPA from accessing the computers by withholding logins, or that he remotely

---

[2]This description of confidential information is a lame attempt to circumvent the clear language of the pre-emption provision of the AUTSA.

6

deleted shared files. EPA has produced *no* evidence to whom he supposedly wrongfully provided information. EPA has produced *no* evidence that any person or entity is competing with it – it is not even in the collection business any more – by using wrongfully accessed material provided by Mr. Knap.

The topic of authorized access was thoughtfully discussed by Judge Silver in *Shamrock Foods Compay v. Gast,* 355 F. Supp.2d 962 (D. Ariz. 2008). There an employee who possessed authorized access to the employer's computers left for a competitor, but prior to leaving emailed computer information to his personal computer. Plaintiff discovered the email via a forensic analysis of the computer.

Judge Silver pointed out that initial authorized access was not disputed, and then went on to discuss the meaning of "without authorization." Her explanation bears quotation:

> "The parties' dispute reflect two lines of cases interpreting the meaning of 'authorization.' Some courts have applied principles of agency law to the CFAA and have held that an employee accesses a computer 'without authorization' whenever the employee, without the knowledge of the employer, acquires an adverse interest or is guilty of a serious breach of loyalty. [Citations omitted.]In contrast, other courts have adopted a less expansive view, holding the phrase 'without authorization'generally only reaches outsiders who do not have permission to access the plaintiff's computer in the first place.[Citations omitted.] The Court is persuaded by the narrower view of 'authorization'emraced in the latter line of cases." *Id.* at 964-65.

After an erudite discussion of legislative history and interpretive doctrine, Judge Silver held that, "[A] violation of accessing 'without authorization' occurs only where initial access is not permitted. And a violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted." *Id.* at 967. She held that the employee was initially authorized to access the computer, and that he was entitled to view the specific files0 he emailed to himself. For an almost identical holding in favor of the employee, see *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127 (9th Cir. 2009).

*Ergo,* EPA has failed to state a claim under the CFAA because Mr. Knap had initial authorization and only accessed the computers to retrieve his own information. Moreover,

Mr. Knap believed and alleges here that he was wrongfully ousted and therefore had continued access to the computers. He also swears that "I never gave access to the EPA computers or the information contained on them to any unauthorized person." (Doc. 96 ( c) 20.) Since under *Gast* and *Brekka* he could have sent EPA information to himself prior to his ouster, certainly he cannot be held to have violated the CFAA in trying to protect EPA's assets and provide the requested information after his ouster to those who ousted him. He is entitled to dismissal of EPA's CFAA claim.

RESPECTFULLY SUBMITTED this 26th day of May, 2026.

ROBERT M. FRISBEE

/s/ Robert M. Frisbee

_____
Attorney for Defendant Knap

## CERTIFICATE OF FILING AND SERVICE

I, Robert M. Frisbee, attorney for Defendant Knap, efiled and served the attached document on May 26th, 2026.   /s/   Robert M. Frisbee

GRIFFITH BARBEE PLLC
Michael Barbee
Casey Griffith
Joshua Yun
1722 Routh Street, #910
Dallas, TX 75201
Michael.Barbee@griffithbarbee.com
and
FOSTER LAW PARTNERS
Brian J. Foster
Ross P. Meyer
4402 N. 36th Street, #127
brian@Fosterlawgroup.com
Attorneys for Plaintiff

JAMES OLSEN LAW
James W. Olsen
2205 W. 136th Ave., Ste. 106 PMB 2863
Bloomfield, CO 80023
james@olsen.com
Attorney for Defendant

8