Robert M. Frisbee #018779
7691 E. Via Montoya
Scottsdale, Arizona 85255
Phone:  (602) 354-3689
Fax: (602) 266-7744
Cell: (480) 600-4719
rfrisbee@fbplclaw.com
Attorney for Defendant Knap

## IN THE UNITED STATES DISTRICT COURT

## FOR DISTRICT OF ARIZONA

| EPA USA Incorporated, | ) | No. 2:24-cv-00749-GMS |
|---|---|---|
| Plaintiff, | ) ) ) | **DEFENDANT'S CONTROVERTING STATEMENT OF FACTS IN** |
| vs. | ) ) | **OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR** |
| Kamil Knap, | ) ) | **PARTIAL SUMMARY JUDGMENT** |
| Defendant. | ) ) | |

Defendant Kamil Knap submits his LR Civ 56.1(b) Controverting Statement of Facts In Opposition to Plaintiff's Amended Motion For Partial Summary Judgment. The disputed facts are address in the order presented in Plaintiff's Statement. An omitted statement is undisputed.

### DISPUTES AS TO PLAINTIFFS FACTUAL ALLEGATIONS

**A. EPA's Corporate Structure, Ownership, and Operation**

1. Disputed. Whether the statement is true depends on the determination of the fact finder as to that issue. See 2, below.

2. Disputed. The Agreement of 9/26/23 provided that Defendant Knap would receive all EPA shares, and he is the constructive owner of EPA. It was always the intention of R2P/El Palo Alto to vest Mr. Knap with ownership of EPA, as expressed in text messages between Mr. Knap and Natalie Pomeranou on 12 October 2023:

Natalie P: we have no interest in keeping EPA
Kamil K: I am sad to hear that, but undertand
Natalie P: It was the agreement from the beginning - we stick to what was agreed
(Doc. 96 ( c), ¶ 6)

3. Admitted, if the statement means only that there is no specific writing or document formally transferring the shares. Disputed, in the sense that there are writings and documents (e.g. 2, above) which refer to a transfer and intent to do so.

5. Admit that the bylaws quote is accurate. However, removal connot occur if the Board is estopped by its conduct from doing so as a matter of law.

**B. Separation Agreement**

8.-12. Admit that the document says those things. To the extent that the facts recited imply that Mr. Knap did not fulfill the requirements, or was prevented from doing so by EPA and/or R2P/El Palo Alto, they are disputed.

13. Disputed. The Agreement contains multiple deadlines, e.g. "13/10/2023" and "31/12/2023". Moreover, the parties had multiple communications and agreements about dates and acts different from those set forth in the Agreement, to which Mr. Knap will testify.

14. Disputed. The statement is only the opinion of Natalie Pomeranou, and is not based on experience in operating EPA, and the opinion will be challenged on the basis of no foundation. All of data was successfully used by Mr. Knap in running EPA. (Doc. 96 ( c), ¶ 7)

17. Disputed. This statement is found at Doc. 18, p.3, ll. 17-19, and is not based on any document or admissible financial proof - it is simply the self-serving, unsubstantiated opinion of Natalie Pomeranou.

18. Disputed. Mr. Knap delivered everything available to him to transfer. He was prevented from transferring some information due to the termination of his access to DebThor and other operational features of EPA. (Doc. 96 ( c), ¶ 8; Doc. 18, p. 4, ll. 14-15)

19. Disputed. It was not terminated on that date, but rather when Mr. Knap was

2

wrongfully discharged, a date which is inconsequential to this litigation.

20. Disputed. Mr. Knap's Response to RFA flatly denies the statement, and in fact Mr. Knap did everything he was asked to do which wasn't prevented by Plaintiff. (Doc. 96 ( c), ¶ 8)

**C. Knap's Removal from EPA**

21. Disputed. A resolution was created, but Defendant disputes whether El Palo Alto had the "right" to remove him from EPA under circumstance which evoke estoppel to do so.

22.-23. Disputed. It is contested whether the actions recited "effected" anything at all.

27. Disputed, depending on the definition of "operate." Defendant Knap continued to run the business as necessary to continue operations and protect the assets.

**D. Knap's Unauthorized Post-Removal Conduct.**

31. Disputed. As stated in his Response to RFA 17, "I turned everything over as quickly and efficiently as I could, and some of the deliveries might not have occurred by February 28." Mr. Knap did not "fail" in any sense, rather he acted reasonably under the circumstances in attempting to comply with the persons claiming to be the new operators of EPA.

**E. Knap's Breach of Fiduciary Duties**

32. Disputed. He did not "fail to deny" anything. Rather, as stated in Response to RFA 1, "Defendant always reported accurately such information as El Palo Alto requested."

33. Disputed, in that the statement is included as a "breach of fiduciary duty." As stated in Response to RFA 2, "Some [licenses] expired when it was decided not to pursue further collection activity in that state, and in some state collection activity was stopped due to COVID."

35.-36. Disputed. Admits that was said in his deposition, but there was no breach of fiduciary duty. Any personal expense such as hockey tickets was by far offset by what Mr. Knap was owed by R2P/El Palo Alto for unpaid salary and loans made to EPA. (Doc. 96 (

c), ¶ 15, 16)

39.-40. Disputed, to the extent the statements imply corporate malfeasance. All significant decisions were approved by R2P/El Palo Alto's owners or management.

41. Disputed to the extent the statement implies wrongdoing or malfeasance. The various accounts were established for various purposes and the titles of the accounts at the banks at which they were established speak for themselves. Mr. Knap and EPA's accountant knew which accounts to use for what purpose. (Doc. 96 ( c), ¶ 9)

42. Disputed. The statement was made in deposition, but the implication is entirely erroneous. There was no necessity for documentation "to track the movement of funds between numerous accounts" because the accounts speak for themselves as to deposits, transfers and payments. (Doc. 96 ( c), ¶ 9)

43. Disputed. He did not fail to file necessary tax returns during his tenure, and the statement is purely the unsubstantiated opinion of Pomeranou.

44. Disputed. The fact of license expiration is admitted, but not the implication of wrongdoing. Some licenses expires when it was decided not to pursue further collection activity in that state, and in some states collection was stopped due to COVID debt collection moratoriums. The licenses where collection was effective did not expire. (Doc. 94, #2; Response to RFA 2)

**F. Knap's Self-Dealing Transactions**

47. Disputed. EXH. D to Doc. 96, pp. 65,66)

48. Disputed, as phrased. If the implication is that EPA made collections for Knap's personal benefit, the statement is untrue. EPA did "service" the debt for EPA's benefit.

49. Disputed. Defendant does not know what is meant by "these debts." In fact, Mr. Knap was apointed to run ePA's debt collection activity, and he did so.

**G. Knap's Trade Secret Misappropriation**

58.-59. Disputed. The RFA is ambiguous and not limited to time. Moreover, Mr. Knap

4

had to maintain access to the portfolios in order to comply with R2P/El Palo Alto's requets for EPA's assets and materials, and to protect those assets and materials.

60. Disputed. Mr. Knapp had the obligation to protect EPA's assets and materials and didn't need anyone's "consent" to do so.

62. Disputed. (Pl. Exh. 3, at 83:02-23)

**H. Knap's Computer Fraud and Abuse Act Violations**

65. Disputed. There are no "later admissions." Defendant's Amended Objections and Responses, Nos. 10,11, flatly deny the statement.

66. Disputed as to implication. It is a factual issue whether any access was improper under the circumstances, and Defedant contends that access was not improper in any respect.

68.-69. Disputed. Defendant Knap does not admit he accessed the computers to obtain information "from EPA's debt portfolios." Amended Responses 14-16 express no knowledge as to what EPA means by "information," and states that access to the computers was necessary to "protect the business and those assets."

70. Disputed as to intent. Because of his position and obligation to EPA he had to store some personal information and his Smartsheets.

71. Disputed. Response No. 12 says "Denied."

72. Disputed. Defendant Knap did not remove or delete anything belonging to EPA, but rather removed intellectual property that he created and owned. (Doc. 96 ( c), ¶ 10)

73. Disputed as to intent. Mr. Knap removed what was personal information, ads and the like. (Doc. 96 ( c), EXH D, p. 13)

74. Disputed. Mr. Knap never refused to turn over property belonging to EPA at any time. (Doc. 96 ( c), ¶ 10)

75. Disputed. (Doc. 96 ( c), ¶ 10,11)

77. Disputed. Doc. 13-1 at 6 makes no such statement, and doesn't mention "unauthorized access" to what.

78. Disputed. The website was never shut down. (Doc. 96 ( c), ¶ 12)

79. Disputed. The supposed fact is based on "information and belief" and not on any admissible document or expert testimony which has been disclosed.

**I. Knap's Conversion and Trespass to Chattels**

82. Disputed. EPA has not experienced a loss of business revenue since it has not been in the debt collection or any other business in the United States since shortly after Mr. Knap was removed. (Doc. 96 ( c), ¶ 21,22)

83. Disputed. EPA offers no admissible proof of this claim either through documents or expert opinion.

**DEFENDANT KNAP'S STATEMENT OF MATERIAL FACTS**

1. The entirety of Mr. Knap's Declaration of June 19, 2025 (Doc. 96( c))

2. Kamil Knap was prevented by R2P/El Palo Alto/EPA from performing the conditions stated in the Agreement of 9/26/23. (Doc. 96 ( c), ¶ 5)

3. EPA admitted through text messages of Pomeranou that it was the intent of the 9/26/23 Agreement that Knap should receive 100% of the ownership of EPA. (See Response 2, above.)

4. Kamil Knap was never an employee of EPA. (Doc. 96 ( c), ¶ 18)

5. Kamil Knap created all of the intellectual property used by EPA. (Doc. 96 ( c), ¶ 18)

6. R2P and MBA, two of the "family of companies," owes Kamil Knap nearly $1.4 million in unpaid back salary. (Doc. 96 ( c), ¶ 16, EXH C)

7. Kamil Knap never gave access to EPA's computers or the information contained therein except to persons legally entitled for such access. (Doc. 96 ( c), ¶ 21)

8. EPA is no longer conducting business in the United States. (Doc. 96 ( c), ¶ 21)

9. There is no way for EPA to determine whether any particular debt has expired because of the statute of limitations because it no longer does business in the United States,

and would have to examine each debt in a particular debt portfolio to make that determination. (Doc. 96 ( c), ¶ 22)

RESPECTFULLY SUBMITTED this 26th day of May, 2026.

ROBERT M. FRISBEE

/s/ Robert M. Frisbee

_____
Attorney for Defendant Knap

## CERTIFICATE OF FILING AND SERVICE

I, Robert M. Frisbee, attorney for Defendant Knap, efiled and served the attached document on May 26th, 2026.   /s/   Robert M. Frisbee

GRIFFITH BARBEE PLLC
Michael Barbee
Casey Griffith
Joshua Yun
1722 Routh Street, #910
Dallas, TX 75201
Michael.Barbee@griffithbarbee.com
and
FOSTER LAW PARTNERS
Brian J. Foster
Ross P. Meyer
4402 N. 36th Street, #127
brian@Fosterlawgroup.com
Attorneys for Plaintiff

JAMES OLSEN LAW
James W. Olsen
2205 W. 136th Ave., Ste. 106 PMB 2863
Bloomfield, CO 80023
james@olsen.com
Attorney for Defendant