**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

EPA USA Incorporated,
Plaintiff,
v.
Kamil Knap,
Defendant.

No. CV-24-00749-PHX-GMS

**ORDER**

Pending before the Court are Defendant Kamil Knap's ("Defendant") Motion for Summary Judgment (Doc. 88) and Plaintiff EPA USA Inc.'s ("EPA USA") Motion for Partial Summary Judgment (Doc. 110). For the reasons discussed below, Defendant's Motion for Summary Judgment (Doc. 88) is denied. EPA USA's Motion for Partial Summary Judgment (Doc. 110) is granted in part and denied in part.

**BACKGROUND**

This case involves a dispute between EPA USA, a corporation incorporated in California with a principal place of business in Arizona, and Defendant, EPA USA's former board member and director. (Doc. 1 at 1-2). EPA USA is a debt collection agency that purchases "debt portfolios" from lenders. (*Id.* at 3). These portfolios are filled with past-due debts that the original lender no longer wishes to pursue. (*Id.* at 3). EPA USA purchases the portfolios at a price lower than the outstanding debt and produces a profit by successfully collecting the past-due amounts. (*Id.* at 4).

Defendant formed EPA USA in 2019, using financing provided by El Palo Alto PTE.LTD ("El Palo Alto"). (*Id.*). El Palo Alto is a Singaporean company and is the original sole shareholder of EPA USA. (*Id.*).

On September 26, 2023, Defendant entered into a written agreement with El Palo Alto and a third company, R2P Invest PTE Ltd ("R2P"). (Doc. 15-2 at 1-4). That agreement stated that Defendant would transfer his 33% ownership in El Palo Alto to R2P—along with access codes, e-mails, banking information, and debt portfolios—and in return, El Palo Alto would transfer all its shares in EPA USA to Defendant. (*Id.*). While the parties dispute fault, they agree that the contract was never performed. (Doc. 113 at 2).

On February 6, 2024, El Palo Alto issued resolutions that expressed intent to exercise its right as the sole shareholder of EPA USA to remove Defendant from his role as Director. (Doc. 111 at 4). EPA USA's bylaws allow for a director to "be removed at any time by vote of the stockholders then entitled to vote for the election of directors at a special meeting called for that purpose, either with or without cause." (Doc. 111-5 at 11). The bylaws further allow an officer to "be removed at any time by the Board of Directors for cause or without cause at any regular or special meeting." (*Id.* at 13).

El Palo Alto effectuated this removal with a Unanimous Written Consent as sole shareholder of EPA USA, replacing Defendant with a new director. (Doc. 110 at 8). The new director then removed Defendant as Secretary and Chief Financial Officer of EPA USA.[1] (*Id.*). On February 14, 2024, EPA USA's counsel sent a termination email to Defendant, informing Defendant of his removal and requesting Defendant turn over all of EPA USA's belongings, including books, filings, passwords, and records. (Doc. 111-1). Defendant admitted to receiving this notice within a day. (Doc. 111 at 5). A week after Defendant was informed of his removal, Defendant filed a Statement of Information with the State of California's Office of the Secretary of State, naming himself as CEO, CFO, and Secretary of EPA USA. (*Id.*).

[1] In Doc. 113-1 at 3, Defendant does not dispute these acts occurring but rather disputes El Palo Alto's ability to remove him.

Following his removal, Defendant concedes that he "continued to run the business" of EPA USA. (Doc. 113-1 at 3). Further, Defendant admits that he retained control over EPA USA's assets, (Doc. 111-2 at 5), and accessed EPA USA's QuickBooks, (Doc. 111-2 at 5), his EPA USA email, (Doc. 113-1 at 5), and EPA USA's Google Drive, (*Id.*), after February 14, 2024. Defendant argues that this access was necessary to "protect the business and those assets." (*Id.*).

On April 4, 2024, EPA USA filed its complaint against Defendant in the present suit, alleging that Defendant misappropriated EPA USA's trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836), violated the Computer Fraud and Abuse Act (18 U.S.C. § 1030) by improperly maintaining possession of EPA USA's valuable debt portfolios, and breached his fiduciary duties to EPA USA by taking intentional action to frustrate EPA USA's operations, among other claims. (Doc. 1 at 9-16).

On May 1, 2024, EPA USA moved for a temporary restraining order ("TRO") against Defendant, asking the Court to prevent Defendant from withholding, destroying, or accessing EPA USA's property. (Doc. 13). The Court granted the TRO. (Doc. 20; Doc. 22). The Court converted the TRO into a preliminary injunction on May 29, 2024, imposing additional requirements. (Doc. 35).

**I. Singapore Litigation**

On July 3, 2024, El Palo Alto filed a lawsuit with three claims against Defendant in the General Division of the High Court of the Republic of Singapore ("Singapore Litigation"). (Doc. 88-2). Defendant was a director of El Palo Alto at the time. (*Id.*). El Palo Alto sought to cancel the issuance of non-monetary shares of El Palo Alto to Defendant, damages from Defendant's breach of fiduciary and statutory duties to El Palo Alto, and wrongful appropriation of El Palo Alto's funds. (*Id.*).

In the first claim, El Palo Alto alleged that on July 31, 2022, Defendant improperly induced El Palo Alto to issue shares of El Palo Alto to Defendant without paying consideration and without disclosing his conflict of interest with El Palo Alto. (*Id.* at 5-10). This conflict of interest was based on Defendant's position as shareholder and director

of other companies that engaged in management consultancy services, debt collection software development, and portfolio purchasing. (*Id.* at 6-8).

In the second claim, Plaintiff alleged that Defendant breached fiduciary and statutory duties *owed to El Palo Alto* in Defendant's role as a *director of El Palo Alto*. (*Id.* at 8-12). El Palo Alto alleged that they incurred expenses and suffered fines due to Defendant's failure to name a secretary of El Palo Alto, prepare financial statements for El Palo Alto, and hold annual meetings for El Palo Alto, which resulted in a breach of Singapore's corporate regulations. (*Id.* at 10-12).

Finally, the third claim in the Singapore Litigation was for Defendant's alleged wrongful appropriation of money from El Palo Alto. (*Id.* at 12-13). El Palo Alto claimed that in September 2023, Defendant withdrew money from El Palo Alto's bank account and transferred the money into Defendant's personal account.

On January 13, 2025, Defendant and El Palo Alto reached a mediated settlement ("Settlement Agreement") in which Defendant agreed to pay El Palo Alto 30,000 Singapore Dollars and to transfer 596,037 shares of El Palo Alto to Sprinter Stellar Ltd., another entity under the R2P umbrella. (Doc. 88 at 3). In exchange, El Palo Alto agreed "to file a Notice of Discontinuance of their claim." (Doc. 88-2 at 16). The Settlement Agreement further stated that Defendant's payment and transfer of shares "is in full and final settlement of all and any claims whatsoever arising out of or in connection with the dispute under *this* Suit and the parties waive any existing or future claims arising out of or in connection with *this* Suit." (*Id.*) (emphasis added). On January 15, 2025, an Order of Court in the General Division of the High Court of the Republic of Singapore was issued, accepting the terms of the Settlement Agreement. (Doc. 100-1). Neither the Order of Court, nor the Settlement Agreement mention the ongoing dispute in this Court or the claims by EPA USA against Defendant. (*Id.*; Doc. 88-2).

**LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the responsibility of presenting the basis for its motion and identifying the portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. When considering motions for summary judgment, courts construe the facts in the light most favorable to the non-moving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a material, factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted). Specifically, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The disputed evidence must be "that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he threshold inquiry . . . [is] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

Defendant bases his motion for summary judgment on the assertion that this suit was resolved by the settlement of the Singapore Litigation (Doc. 88).

Claim preclusion bars claims "which could have been asserted, whether they were or not, in a prior suit between the same parties (or their privies) on the same cause of action, if the prior suit concluded in a final judgment on the merits." *Ross v. Int'l Bhd. of Elec.*

*Workers*, 634 F.2d 453, 457 (9th Cir. 1980). Under federal common law,[2] a subsequent claim is barred if the first case involved the same claim or cause of action as the subsequent claim, reached a final judgment on its merits, and involved identical parties or their privies. *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020–21 (9th Cir. 2019). Courts apply the following four criteria test to determine whether two claims are the same:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (citations omitted).

Applying these four criteria here, there is no identity of claims between the instant case and the Singapore Litigation. In fact, the fourth—and most important, *id.* at 1151—criterion is dispositive of Defendant's claim preclusion arguments because the suits do not arise out of the same transactional nucleus of fact. "Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (citations, quotation marks, and emphasis omitted). Although both sets of claims relate to Defendant's roles as a corporate director, the claims do not share a nucleus of facts. The Singapore Litigation concerned Defendant's role as a director of El Palo Alto and the transactional nucleus of facts center around Defendant's improper management of El Palo Alto between 2019 and 2023 and two transactions in 2023—the issuance of El Palo Alto's shares and the alleged misappropriation of El Palo Alto's money. (Doc. 88-2). The nucleus of facts in the instant case involves Defendant's conduct following removal from his role with EPA USA in 2024 and Defendant's conduct in an alleged self-dealing transaction in 2023. (Doc. 1 at 7-20).

---

[2] When a federal court exercises federal-question jurisdiction, federal common law determines the standards for claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted).

The cases involve different time frames, plaintiffs, types of claims, transactions, and actions by Defendant. Moreover, despite any alleged commonality between the claims, neither the Singapore Action, nor the Settlement Agreement make any mention of the facts or claims involved in this case.[3] (Doc. 88-2; Doc. 100-1). Thereby, the two cases—the litigation in this Court and the litigation in Singapore—are related to two different sets of facts and do not arise out of the same nucleus.

Even further, none of the other three criteria aid Defendant's arguments. First, rights or interests established in the Settlement Agreement are not impaired by the prosecution of this action against Defendant. If EPA USA is successful in this action, nothing stands to change or dispense with the terms of the Settlement Agreement. (Doc. 88-2). Second, there is different evidence required for the successful prosecution of each action. For the Singapore Litigation, the evidence presented is related to Defendant's role as director of El Palo Alto and the alleged fraudulent share issuance. (*Id.*). In the case at hand, the evidence relates to Defendant's role with EPA USA, his removal from that role, and his actions following the removal, resulting in almost no evidentiary overlap. And third, the two suits involve infringement of different rights. The Singapore Litigation involved El Palo Alto's right to be free from improper share issuances, misappropriation of funds, and breach of fiduciary duties by its directors; whereas the current litigation entails EPA USA's right to its trade secrets, rights under the CFAA, and right to be free from conversion, fraud, unfair competition, and breach of fiduciary duties by its directors.

Accordingly, the Court denies Defendant's motion for summary judgment as there is no identity between the claims settled in the Singapore Litigation and the claims at hand.

---

[3] In his motion, Defendant briefly argues that the express terms of the Settlement Agreement dispose of the case-at-hand. The language of the Settlement Agreement is restrictive, stating that the agreement applies to claims "under this Suit" or claims "arising out or in connection with this Suit", in reference to the Singapore Litigation alone. (Doc. 88-2 at 16). For the same reasons there is no identity between the claims in the two cases, the Settlement Agreement did not extinguish the claims in this case.

## II. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's Motion for Partial Summary Judgment asks the Court to grant declaratory relief under Count 1, finding that Defendant's removal from EPA USA was valid and that Defendant's subsequent business filings were invalid. Plaintiff also argues that they are entitled to summary judgment as to Defendant's liability for trade secret misappropriation under Count 2, their Defend Trade Secrets Act (DTSA) claim, and Count 10, their Arizona Uniform Trade Secret Act (AUTSA) claim, violations of the Computer Fraud and Abuse Act (CFAA) under Count 3, and for breach of Defendant's fiduciary duties owed to Plaintiff under Count 5.[4]

### A. Analysis

For the reasons provided below, EPA USA's Motion for Partial Summary Judgment is granted in part and denied in part.

#### 1. Declaratory Judgment Regarding Defendant's Removal (Count 1)

Plaintiff seeks summary judgment on its claim for declaratory relief, asking the Court to "find (1) the Unanimous Written Consents removing Knap as EPA USA's Director and Officer are valid and enforceable and (2) Knap's subsequent California business filings misrepresenting his positions at EPA are void or otherwise invalid." (Doc. 110 at 7). At Oral Argument, Defendant conceded both claims. Thus, EPA USA is entitled to summary judgment on its claims for declaratory relief regarding the propriety of Defendant's removal from EPA USA and the impropriety of Defendant's subsequent California Business filings.

#### 2. Trade Secret Misappropriation Claims (Counts 2 and 10)

Plaintiff next alleges that Defendant violated both the DTSA and the AUTSA by continuing to access and use EPA USA's debt portfolios following Defendant's removal from his roles with EPA USA. EPA USA requests summary judgment against Defendant on the issue of Defendant's liability for violating the DTSA and AUTSA, along with

[4] Plaintiff only moves for summary judgment as to liability for Counts 2, 3, 5, and 10.

declaratory relief establishing EPA USA's debt portfolio as trade secrets. DTSA defines a trade secret as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information … whether tangible or intangible, and whether or how stored, compiled, or memorialized … if-- (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C.A. § 1839. AUTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that both: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"; and "(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A.R.S. § 44-401(4).

"Therefore, the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citing 18 U.S.C. §§ 1839(3), (5)). Because the elements under both statutes are substantially similar, the Court will analyze the claims together. *Id.* "To succeed on a claim for misappropriation of trade secrets … a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Id.* at 657–58.

For information to be a trade secret, it must derive independent economic value from not being generally known and reasonable efforts must be made to maintain its secrecy. 18 U.S.C.A. § 1839(3); A.R.S. § 44-401(4). Defendant disputes his ownership of intellectual property developed during his time as a director of EPA USA.[5] The debt portfolios were

[5] At Oral Argument, Defendant' counsel claimed that he disputed whether the debt portfolios are trade secrets, but Defendant's counsel is incorrect. Defendant's counsel

purchased by EPA USA, not developed by Defendant, meaning Defendant's arguments do not apply to the portfolios at issue.

There are two parts of debt portfolios: "(1) the information within the debt portfolios, such as the debtor's name, address, and account information, and (2) the legal right or ability to use the information within the debt portfolios to collect the debts." (Doc. 110 at 19). EPA USA argues that the information within the debt portfolios is valuable because the information is not generally known but fails to put forth facts that demonstrate this assertion. It appears to the Court that the debt portfolios have value because EPA USA has the legal right to collect the debt, not because the information is not generally known. EPA USA has not met its burden in showing that the debt portfolios are trade secrets. Plaintiff's Motion for Summary Judgment on Defendant's liability under the trade secret statutes is denied.

**3. CFAA Claim (Count 3)**

Plaintiff alleges that Defendant has violated the Computer Fraud and Abuse Act and that Plaintiff is entitled to civil remedies. The CFAA declares that "[w]hoever ... intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer ... shall be punished." 18 U.S.C. § 1030(a)(2). A protected computer is any computer "used or affecting interstate or foreign commerce or communication." § 1030(e)(2)(B). The term protected computer is interpreted broadly to encompass "all information from all computers that connect to the Internet." *Van Buren v. United States*, 593 U.S. 374, 379 (2021).

The CFAA provides a civil remedy for "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." § 1030(g). To receive the civil remedy, the Plaintiff must show that the wrongful "conduct involves 1 of the factors set forth in subclauses (I) (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." *Id.*

---

disputed both the ownership of the debt portfolios and whether Defendant misappropriated them, not whether the debt portfolios themselves were trade secrets. (*See* Doc. 113 at 4-6).

Plaintiff argues that Defendant's conduct involved factor § 1030(c)(d)(A)(i)(I), which forbids conduct that caused "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." Consequently, to succeed under the CFAA, EPA USA must show that Defendant: (1) intentionally accessed a protected computer, (2) without authorization, (3) obtained information from that computer, and (4) there was loss to EPA USA or others of at least $5,000 in value in the span of one year.

Plaintiff has failed to meet its burden for summary judgment on the first element—whether Defendant accessed EPA USA's computers post-removal. Defendant admits that he accessed EPA USA's QuickBooks, (Doc. 111-2 at 5), his EPA USA email, (Doc. 111-4 at 3), and EPA USA's Google Drive, (Doc. 111-2 at 5; Doc. 113-1 at 5), following his removal. But Defendant denies accessing an EPA USA computer, alleging that he only used his own computer for his EPA USA activities after removal. (Doc. 111-2 at 4). EPA USA has not provided clear evidence to warrant summary judgment on the issue as to whether Defendant accessed one of EPA USA's computers post-removal. Although Defendant's Controverting Statement of Facts in his Response to the Motion for Summary Judgment ¶¶ 68-69, (Doc. 113-1 at 5), may subliminally admit post-removal access of the computers, the implications are unclear, and EPA USA "bears the burden of establishing the absence of genuine issues of material fact." *Celotex*, 477 U.S. at 323.

Because Plaintiff has failed to meet its burden on showing Defendant's access into one of EPA USA's laptops, Plaintiff's Motion for Summary Judgment on Defendant's liability under the CFAA claim is denied.

**4. Breach of Fiduciary Duty Claims (Count 5)**

Both parties agree that Arizona law is applicable to the breach of fiduciary duty claims. In Arizona, to prevail on a breach of fiduciary duty claim, a Plaintiff must establish the existence of a fiduciary duty, breach of that duty, and damages from that breach. *John E. Shaffer Enters. v. City of Yuma*, 183 Ariz. 428, 432, 904 P.2d 1252 (Ct. App. 1995). Directors and officers of corporations in Arizona owe a statutory duty to the corporation to act: "1. In good faith. 2. With the care an ordinarily prudent person in a like position would

exercise under similar circumstances. 3. In a manner the [director or officer] reasonably believes to be in the best interests of the corporation." A.R.S. §§ 10-830, 10-842. Whether a corporate officer or director has breached their fiduciary duty is generally a question of fact, decided by the jury. *Navajo Health Found.-Sage Mem'l Hosp. Inc. v. Razaghi Dev. Co. LLC*, 800 F. Supp. 3d 955, 988 (D. Ariz. 2025) (citing *Great W. Bank v. LJC Dev., Ltd. Liab. Co.*, 238 Ariz. 470, 362 P.3d 1037, 1045 (Ariz. Ct. App. 2015)).

EPA USA argues that Defendant violated his fiduciary duties by (1) using EPA USA's resources for personal purposes, (2) failing to maintain proper corporate records, (3) allowing debt collection licenses to expire, and (4) engaging in alleged self-dealing transactions.[6] (Doc. 110 at 12-18).

First, EPA USA alleges that Defendant used EPA USA funds to both purchase hockey tickets for his parents, (Doc. 110 at 13), and personal travel for himself and his wife. (*Id.* at 16). Defendant has admitted to the purchasing of the hockey tickets. (Doc. 113-1 at 3). Second, Plaintiff also alleges that Defendant's failure to keep proper corporate records constituted a breach of fiduciary duties owed to EPA USA. (Doc. 110 at 14). Defendant did not maintain formal board minutes, documentation that approved or recorded financial decisions for EPA USA, or documentation that monitored or tracked the movement of funds between EPA USA's twenty-one bank accounts. (Doc. 111 at 6). Defendant admits to these facts. (Doc. 113-1 at 4). Third, Plaintiff claims that Defendant breached his fiduciary duties to EPA USA by allowing debt collections licenses to expire in various states. (Doc. 110 at 15).

Fourth, Plaintiff also alleges that Defendant breached his fiduciary duty by engaging in a self-dealing transaction in the purchase of a debt portfolio from AltaOne. (Doc. 111 at 7). In September 2023, EPA USA and Defendant jointly purchased a debt portfolio from AltaOne, in which EPA USA contributed 20% of the purchase price with EPA USA's funds

[6] Plaintiff also claims that Defendant's conduct in not returning the debtor portfolios and other financial information following Defendant's removal was a breach of fiduciary duties. However, a director or officer's fiduciary duties end once a relationship with the corporation ends. *Standage v. Planned Inv. Corp.*, 160 Ariz. 287, 291, 772 P.2d 1140, 1144 (Ct. App. 1988) (citation omitted). As a matter of law, Plaintiff cannot rely on acts that occurred following Defendant's removal to establish a breach of fiduciary duty claim.

and Defendant contributed 80% of the purchase price using Defendant's personal funds. (*Id.*). EPA USA serviced the AltaOne debt portfolio. (*Id.*). Defendant paid himself from EPA USA's accounts as repayment from the revenue generated by EPA USA from the servicing of the AltaOne debt portfolio. (*Id.*). There was no written agreement regarding the joint purchase of the AltaOne debt portfolio as to the splitting of the purchase price or revenues generated from the portfolio. (Doc. 111-4 at 12). No one, besides the Defendant himself, approved Defendant's joint purchase of the AltaOne debt portfolio. (*Id.* at 13).[7]

Defendant tries to make counterarguments concerning the breach of fiduciary duties in his controverting statement of facts, "[b]ut explanation and argument belong in the responsive motion, not in the statement of facts." *Puckett v. United States*, 704 F. Supp. 3d 998, 1003 (D. Ariz. 2023). Defendant should have made his arguments in his response.

However, because breach of fiduciary duty is an issue of fact, it is the province of the jury to decide whether Defendant breached. *Navajo Health Found.-Sage Mem'l Hosp. Inc.*, 800 F. Supp. 3d at 988 (citation omitted). Summary judgment would be improper for this question of fact because Plaintiff has failed to meet its factual burden as to all elements of the claim, and Plaintiff's motion for summary judgment on the fiduciary duties claim is denied.

## CONCLUSION

Defendant's Motion for Summary Judgment on claim preclusion grounds is denied as there is no identity between the claims in the Singapore Litigation and the claims in the current case. Plaintiff's Motion for Summary Judgment is granted in part and denied in part. For Count 1, Plaintiff's motion for summary judgment is granted and they are entitled to declaratory relief as to the propriety of Defendant's removal and the impropriety of his actions following removal. For Counts 2, 3, 5, and 10, summary judgment for Plaintiff is denied.

---

[7] These claims for breach of fiduciary duties are not preempted by the AUTSA because these claims are not based on an alleged misappropriation of trade secrets but are instead based on Defendant's conduct while a director and officer. A.R.S. § 44-407(A); *See Solar Optimum Inc. v. Elevation Solar LLC*, 2024 WL 1961858, at *6 (D. Ariz. May 3, 2024) (citing *Smoketree Holding LLC v. Apke*, 2023 WL 6377272 (D. Ariz. Sept. 29, 2023)).

**IT IS ORDERED** that Defendant Kamil Knap's Motion for Summary Judgment (Doc. 88) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff EPA USA Incorporated's Motion for Partial Summary Judgment (Doc. 110) is **GRANTED as to Count 1** and **DENIED as to Counts 2, 3, 5, and 10.**

Dated this 14th day of September, 2026.

G. Murray Snow
Senior United States District Judge